

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00228-CV

AUDREY DIANE GOURLEY                                    APPELLANT

V.

CRAIG NEIL GOURLEY                                        APPELLEE

----------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 324-578647-15

----------

## MEMORANDUM OPINION[1]

----------

Appellant Audrey Diane Gourley appeals from the trial court's judgment declaring a 1998 divorce decree void and declaring the property division as stated in the prior 1996 divorce decree enforceable. Because we agree with the trial court that the 1998 divorce decree was void, we affirm the trial court's declaratory judgment.

---

[1]See Tex. R. App. P. 47.4.

# I.  BACKGROUND

## A.  THE 1996 DECREE

On June 11, 1978, Audrey and Appellee Craig Neil Gourley were married. During the marriage, Craig served as an officer in the United States Air Force until October 1988, when he separated from active duty to serve with the United States Air Force Reserve.  During his reserve duty, Craig worked as a pilot for a commercial airline.  In 1996, Craig filed for divorce.  The trial court signed a final divorce decree on December 30, 1996,[2] and as relevant to this appeal, addressed Craig's military-retirement benefits:

> [Craig] is awarded the following as [his] sole and separate property, and [Audrey] is divested of . . .
>
> . . . .
>
> . . . [a]ll right, title, and interest in and to that portion of the United States disposable retired or retainer pay to be paid as a result of [Craig's] service in the United States Air Force and reserves subject to [Audrey's] award as more fully set out in the Qualified Domestic Relations Order [QDRO] to be entered herein.  The [QDRO] will deal with the benefits **from the date of marriage to the date of divorce**.  All other benefits are awarded to [Craig]. [Emphasis added.]

---

[2]The decree was originally signed on December 19, 1996.  On December 30, the trial court granted Craig's agreed motion to correct the December 19 decree, which Craig incorrectly styled as a motion for judgment nunc pro tunc, and signed a decree that same day to increase Audrey's allowed owelty-lien amount.  *See generally* Tex. R. Civ. P. 306a.6 & 316 (allowing for nunc pro tunc correction of clerical mistakes in judgment after plenary power expires), 329b (addressing requirements for motions to modify, correct, or reform the judgment). The division of Craig's military-retirement benefits was not affected by the corrected December 30 decree.  Our use of "the 1996 decree" in this opinion refers to the decree signed by the trial court on December 30.

*See generally* Tex. Fam. Code Ann. § 7.003 (West 2006) (requiring trial court to address retirement benefits in property division). The trial court then awarded Audrey a one-half, separate-property interest in Craig's military-retirement benefits:

> [Audrey] is awarded the following as [her] sole and separate property, and [Craig] is hereby divested of all right, title, interest, and claim in and to . . .
>
> . . . .
>
> . . . [o]ne-half of [Craig's] retirement benefits from the United States Air Force and Reserves **from the date of marriage to the date of divorce**, provided that, without affecting the finality of this decree, the parties may submit a separate [QDRO] at a later date, in order to effectuate **this** award. [Emphases added.]

Audrey was not represented by counsel during the divorce proceedings. No party appealed from the 1996 decree.

## B. THE 1998 DECREE

On April 13, 1998—almost sixteen months after the trial court signed the 1996 decree—Craig filed an agreed motion for judgment nunc pro tunc asking the trial court to correct the 1996 decree to add language required by the United States Air Force, which had been "inadvertently omitted" from the 1996 decree. That same day, the trial court granted Craig's motion, entering a decree that changed the language dividing Craig's military-retirement benefits (1) to award Craig as his separate property "[a]ll right, title and interest in and to that portion of the United States Air Force disposable retired or retainer pay to be paid as a

3

result of [Craig's] service in the United States Air Force and Air Force Reserve not awarded in this Decree to Audrey" and (2) to award Audrey as her separate property

> [a]ll right, title and interest in and to fifty percent (50%) of the United States Air Force disposable retired or retainer pay to be paid as a result of [Craig's] service in the United States Air Force and Air Force Reserve, and fifty percent (50%) of all increases in the United States Air Force disposable retirement or retainer pay due to cost of living or other reasons, **if, as, and when received**. [Emphasis added.]

The trial court further included language required by federal law:

> Payment of United States Air Force Retirement Pay

> The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. Section 1408, as follows:

> . . . .

> . . . It is intended by this Court and the parties that the secretary of the Air Force or his designee make the payments due to [Audrey] of her interest in the retirement benefits awarded in this decree directly to her.

> IT IS FURTHER ORDERED AND DECREED that the Secretary of the Air Force or his designated agent will pay to [Audrey] directly, each month, her interest awarded in this decree in the United States Air Force disposable retired or retainer pay paid as a result of [Craig's] service in the United States Air Force and the Air Force Reserves, plus fifty percent (50%) of all cost-of-living or other increases in the United States Air Force disposable retired or retainer pay, on a monthly basis **if, as and when that retirement pay is due to be paid**. [Emphasis added.]

Craig's divorce attorney added this language at the request of the United States Department of Defense. The 1998 decree also included a finding that Craig was retired from the United States Air Force "at the time this case was tried"—

4

December 19, 1996. Again, Craig's attorney included this language in the proposed decree because the Department of Defense informed him "that that [specific] language needed to be involved."

## C. DECLARATORY JUDGMENT

In early 2011, Craig left reserve duty and returned to active duty with the United States Air Force. He retired from the United States Air Force on July 1, 2015. That same day, Craig filed a declaratory-judgment action in the same trial court that had entered the 1996 and 1998 decrees, seeking a declaration that the value of Audrey's one-half interest in his military-retirement benefits must be determined as of the date of the divorce, not the date of Craig's retirement as asserted by Audrey and as indicated in the 1998 decree. *See generally* Tex. Fam. Code Ann. § 9.001 (West Supp. 2017) (allowing party affected by property division to file suit to enforce in court that entered decree). He averred that the 1998 decree was void because it effected a substantive and material change in the property division awarded in the 1996 decree; thus, the division as stated in the 1996 decree was the operative division of Craig's military-retirement benefits. Audrey filed a counterpetition for a declaration that the property division in the 1998 decree was the applicable division of Craig's retirement benefits because it was based on a Rule 11 agreement. *See* Tex. R. Civ. P. 11.

Craig and Audrey filed multiple motions for summary judgment, which the trial court denied. At the ensuing January 6, 2017 bench trial, Craig testified that he had never entered into an agreement with Audrey to substantively change the

5

division of his military-retirement benefits as awarded in the 1996 decree. Audrey testified that during a meeting she had with Craig and his attorney in his attorney's office in 1998 before Craig filed the 1998 nunc pro tunc motion,[3] they discussed the change in the division of Craig's military-retirement benefits to clarify that she would receive one-half of the benefits up to the time of his retirement. In short, Audrey asserted that the 1998 decree represented an enforceable Rule 11 agreement to substantively change the award of Craig's military-retirement benefits. Craig testified that Audrey's asserted meeting never occurred and that they never agreed to substantively change the property division. Craig's divorce attorney and the attorney's legal assistant likewise testified that such a meeting never took place. Craig's divorce attorney also testified that the language added in the 1998 decree—that Craig was retired at the time of the 1996 divorce and that Audrey's one-half interest in Craig's military retirement included the years between the 1996 divorce and Craig's retirement date—was at the specific request of the Department of Defense and that there was no agreement between Craig and Audrey in 1998 to substantively change the property division reflected in the 1996 decree.

At the conclusion of the evidence, the trial court orally found that the property-division change in the 1998 decree was substantive, that Craig did not intend a substantive change by moving for a judgment nunc pro tunc, and that

_____

[3]Audrey was not represented by counsel until Craig filed his declaratory-judgment petition in 2015.

6

the 1998 decree resulted in a substantial and inequitable windfall in Audrey's favor. But the trial court deferred its final "rendition." On January 20, 2017, the trial court issued a letter ruling to the parties concluding that the 1998 decree was void because it effected a substantive change from the 1996 decree and was entered outside of the trial court's plenary power. It further found that there was no agreement between Craig and Audrey to substantively change the division of Craig's military-retirement benefits in favor of Audrey and specified that it found Audrey's testimony to be less credible than that of Craig, his divorce attorney, and the attorney's legal assistant. In the letter, the trial court granted Craig's request for a declaration that Audrey's one-half of the benefit be computed from the date of the marriage to the date of the divorce. Finally, the trial court instructed counsel to "present an order to the Court within fourteen days."

On March 9, 2017, Craig filed a motion requesting that the trial court sign the proposed declaratory judgment he attached to the motion. The trial court signed the declaratory judgment on April 7, reflecting the findings and conclusions from the letter ruling and holding that the 1996 decree was "revived." Audrey's motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

### D. ISSUES TO ADDRESS ON APPEAL

In five issues, Audrey appeals and argues that the trial court erred by concluding that the 1998 divorce decree was void and not an enforceable Rule 11 agreement and by declaring the 1996 decree enforceable. Audrey argues in

7

her sixth issue that the trial court erred by denying her motions for summary judgment for the same reasons its declaratory judgment was in error.

We begin with issue six, challenging the trial court's denial of Audrey's summary-judgment motions. After the trial court denied all of the summary-judgment motions filed by Craig and Audrey, the judge sat as the fact-finder and held a trial on the merits. Where a summary-judgment motion is denied by the trial court and the case is tried on its merits, the order denying the summary-judgment motion is not reviewable on appeal. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Collier v. Moe*, No. 03-17-00340-CV, 2018 WL 1192454, at *1 (Tex. App.—Austin Mar. 8, 2018, no pet.) (mem. op.); *Hobby Lobby Stores, Inc. v. Standard Renewable Energy, LP*, No. 02-15-00124-CV, 2016 WL 4247969, at *7 n.13 (Tex. App.—Fort Worth Aug. 11, 2016, pet. denied) (mem. op.). Thus, we overrule issue six and turn to Audrey's issues directed to the trial court's declaratory judgment—issues one through five.[4]

---

[4]Even though Audrey presents five distinct issues in her statement of the issues challenging the declaratory judgment, she conflates and mixes the arguments attacking the declaratory judgment under each issue. For example, issue one is stated as, "The Trial Court Erred in Ruling the 1998 Decree was Void." But in arguing issue one, Audrey briefs whether Craig's contractual defenses and declaratory-judgment action were impermissible collateral attacks, which is part of her fourth issue—whether the 1998 decree was a contract—and also argued under issue five—whether the trial court made a substantive alteration to the 1998 decree's property division. We have attempted to address each argument raised by Audrey in support of the validity of the 1998 decree and decline to attach her arguments to a specific issue. *See generally Thunderbird Supply Co., Inc. v. Williams*, 161 S.W.3d 731, 733 n.1, 736 (Tex. App.—Beaumont 2005, no pet.) (noting argument in brief combined seven issues and addressing arguments raised without specifying issue number).

## II. JURISDICTION

Audrey asserts that the trial court erred by declaring the 1998 decree void and unenforceable because it was rendered outside its plenary power. We review the trial court's determination regarding subject-matter jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo."); *cf. Alaimo v. U.S. Bank Trust Nat'l Ass'n*, No. 02-16-00123-CV, 2017 WL 3633297, at *3 (Tex. App.—Fort Worth Aug. 24, 2017, no pet.) (recognizing that trial court loses subject-matter jurisdiction over case once plenary power expires).

Here, the trial court's 1996 decree clearly awarded Audrey one-half of Craig's military-retirement benefits as of the date of divorce. The 1998 decree was a substantive and material change from the 1996 decree in this respect and, hence, cannot be considered a permissible and valid nunc pro tunc judgment or an allowable enforcement of the division stated in the 1996 decree. *See* Tex. Fam. Code Ann. § 9.007(a)–(b); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003); *Mathes v. Kelton*, 569 S.W.2d 876, 878 (Tex. 1978). Accordingly, the trial court signed the 1998 decree clearly outside of its plenary power to do so, and Audrey seems to concede as much in her brief: "[T]he fact that the court's plenary power had expired has no bearing on the validity of the [1998 decree]." *See* Tex. R. Civ. P. 329b(d); *In re Marriage of Bowe & Perry*, Nos. 14-

9

16-00551-CV, 14-16-00557-CV, 2017 WL 6102779, at \*4–5 (Tex. App.—Houston [14th Dist.] Dec. 7, 2017, no pet.) (mem. op.).

What Audrey does argue, however, is that the 1998 decree—a "consent judgment"—arose out of an enforceable, contractual Rule 11 agreement between Audrey and Craig. Audrey contends that the divorce case was "pending" as contemplated by Rule 11 based on the agreed, contractual April 13, 1998 motion for judgment nunc pro tunc; thus, the trial court could enforce this Rule 11 agreement by signing the agreed 1998 decree even though its plenary power had expired. *See generally* Tex. R. Civ. P. 11 (allowing parties' agreement to be enforced if "touching any suit pending"). But as Craig points out, the 1996 decree became final after no party appealed; therefore, there was no case pending as contemplated by Rule 11. *Cf. Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 525 (Tex. App.—Fort Worth 2011, pet. denied) (holding case on appeal was considered pending for purposes of Rule 11, allowing trial court to enforce agreement); *In re Guthrie*, 45 S.W.3d 719, 728 (Tex. App.—Dallas 2001, pet. denied) (concluding action is pending under Rule 11 "until all issues have been determined, final judgment has been rendered, and all postjudgment motions have been disposed of"). To conclude otherwise would allow parties to agree, through Rule 11 or other contractual arrangement, to vest a trial court with subject-matter jurisdiction where none exists. Once plenary power has expired, a trial court's jurisdiction cannot be vested by party agreement. *See In re*

10

*Vaishangi, Inc.*, 442 S.W.3d 256, 260–61 (Tex. 2014) (orig. proceeding); *In re S.A.H.*, 465 S.W.3d 662, 665 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Audrey also asserts that Craig's declaratory-judgment action and contractual defenses were impermissible collateral attacks on the property division stated in the 1998 decree, which Craig did not appeal and which was presumptively valid. But the 1998 decree was entered outside of the trial court's subject-matter jurisdiction and accordingly was subject to collateral attack as a void judgment. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (holding void, but not voidable, divorce decree is subject to collateral attack); *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (recognizing subject-matter jurisdiction cannot be waived and may be raised at any time). Even though no party appealed from the 1998 decree, the record affirmatively demonstrates that the trial court lacked the subject-matter jurisdiction to enter it. Thus, the presumption that the 1998 decree was valid based on its finality disappears, rendering the 1998 decree subject to collateral attack at any time. *See S.A.H.*, 465 S.W.3d at 665.

For these reasons, we overrule Audrey's five issues directed to the trial court's declaratory judgment.

## III. CONCLUSION

Because the division of Craig's military-retirement benefits in the 1998 decree effected a substantive and material, not clerical, change from the division as stated in the 1996 decree—a final and enforceable judgment at the time the

11

1998 decree was signed—the 1998 decree was void as entered outside the trial court's plenary power. *See generally* Tex. Fam. Code Ann. § 9.007(b) (providing trial court does not have the power to change the property division stated in a final divorce decree). Audrey and Craig's agreement to move the trial court to sign the 1998 decree did not vest the trial court with the subject-matter jurisdiction to do so. And the trial court did not err by so concluding in its declaratory judgment. Accordingly, we affirm the trial court's declaratory judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and PITTMAN, JJ.

DELIVERED:  June 14, 2018