# IN THE SUPREME COURT OF TEXAS

No. 18-0908

IN THE INTEREST OF D.S., A CHILD

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

JUSTICE LEHRMANN, joined by JUSTICE DEVINE and JUSTICE BUSBY, concurring.

As the Court's opinion thoroughly and accurately explains, when a trial court renders judgment terminating parental rights based on an unrevoked affidavit of relinquishment, Texas Family Code section 161.211(c) plainly forecloses a collateral attack on the judgment premised on an alleged lack of subject matter jurisdiction. I therefore join the Court's opinion, which correctly holds that Father's collateral attack is barred by statute. I write separately to note that it is barred for another reason as well: a court's lack of "jurisdiction" under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) does not equate to a lack of "subject matter jurisdiction" that deprives the court of the power to hear and decide the case, thereby endangering a judgment's finality.[1]

"Jurisdiction," the United States Supreme Court has observed, "is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quotation

---

[1] Because the Court's analysis of section 161.211(c) is dispositive of the case, the majority opinion need not and does not decide whether the UCCJEA is a subject matter jurisdiction statute. *See ante* at 17–18.

omitted). When we speak of "genuine subject-matter jurisdiction," *id.*, we speak of a court's "power to decide the case," *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 74–75 (Tex. 2000) (explaining that a "judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action" (citing RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982))). We have expressed concern that classifying a matter as one of subject matter jurisdiction "opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." *Dubai Petroleum*, 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b (1982)). To alleviate that concern, we have embraced the "modern trend" away from labeling a requirement "jurisdictional" in the true "subject matter" sense. *Engelman Irrigation Dist. v. Shields Bros.*, 514 S.W.3d 746, 752 (Tex. 2017); *see also City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) (noting our "reluctan[ce] to conclude that a provision is jurisdictional, absent clear legislative intent to that effect").

In *Engelman*, we were asked whether a judgment against a governmental entity was subject to collateral attack on the ground that the entity enjoyed sovereign immunity from suit. 514 S.W.3d at 748. "Favoring finality over uncertainty," we held that it was not. *Id.* at 747. We noted, among other things, several distinctions between immunity from suit and lack of subject matter jurisdiction. *Id.* at 751. For example, unlike subject matter jurisdiction, immunity can be waived. *Id.* (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 102 (Tex. 2012) (Hecht, J., concurring)). Further, while sovereign immunity "implicates elements of both personal jurisdiction and subject matter jurisdiction," it "is identical to neither." *Rusk*, 392 S.W.3d at 104 (Lehrmann, J., concurring and dissenting); *see also Engelman*, 514 S.W.3d at 751. In light of those distinctions and in the

2

interest of finality, we concluded: "Holding that sovereign immunity so implicates subject-matter jurisdiction that the final judgment against [the governmental entity] can be challenged by collateral attack in a later proceeding would run counter to the trend of Texas law and of American jurisprudence generally." *Engelman*, 514 S.W.3d at 752.

Turning to the UCCJEA, codified in Texas at chapter 152 of the Family Code, in my view the statute "implicates" a court's subject matter jurisdiction even less than does sovereign immunity. The UCCJEA was primarily designed to remedy the increasingly common situation of courts in different states simultaneously exercising jurisdiction in child-custody cases. *Powell v. Stover*, 165 S.W.3d 322, 325 (Tex. 2005). It does so by "prioritizing" the jurisdiction of the child's "home state." *Id.* The UCCJEA's provisions do not provide a court the "authority to adjudicate the *type* of controversy involved in the action," *Dubai Petroleum*, 12 S.W.3d at 75 (emphasis added) (citation omitted), but are concerned with *where* the suit should be litigated. The statute also recognizes that a court with jurisdiction under the UCCJEA may "decline[] to exercise [that] jurisdiction" on the ground that another state is a more convenient forum, TEX. FAM. CODE § 152.201(a)(2), (3), and one of the factors the court considers in making that determination is "any agreement of the parties as to which state should assume jurisdiction," *id.* § 152.207(b)(5). Those provisions are inconsistent with classifying jurisdiction under the UCCJEA as genuine subject matter jurisdiction, which "cannot be conferred upon any court by consent or waiver." *Dubai Petroleum*, 12 S.W.3d at 76 (quoting *Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943)). Further, the Family Code provides that a final order in a custody proceeding rendered by a court other than the court with continuing, exclusive jurisdiction over that proceeding is "voidable," not void. TEX. FAM. CODE § 155.104(b). Yet a judgment rendered

3

without subject matter jurisdiction is *void* and thus subject to collateral attack. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam) (explaining that "a trial court judgment rendered without 'jurisdictional power' in the sense of lack of subject matter jurisdiction" is "void" and may "be set aside by the trial court at any time").

Importantly, the principal justification for this Court's general reluctance to view statutory requirements as jurisdictional—ensuring a judgment's finality—is even more pronounced in child-custody cases. Indeed, one of the UCCJEA's primary concerns is avoiding relitigation of custody judgments, which is often detrimental to the child. *Phillips v. Beaber*, 995 S.W.2d 655, 659 (Tex. 1999) (discussing the UCCJEA's predecessor). Holding that noncompliance with the UCCJEA's requirements deprives a court of subject matter jurisdiction over a custody dispute renders the court's judgment vulnerable to collateral attack years later. And the complexity of making home-state determinations in an increasingly mobile world only magnifies this concern. *See ante* at 9. Such uncertainty harms children and parents alike. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012) ("While no system is infallible, endless litigation, in which nothing was ever finally determined, would be worse than the occasional miscarriage of justice." (alteration and quotation omitted)).

As the Court recognizes, a lack of uniformity exists among other states with respect to their treatment of the UCCJEA's requirements. Some have summarily held, with little to no analysis, that noncompliance with those requirements deprives a court of subject matter jurisdiction over a custody dispute. *See Rosen v. Celebrezze*, 883 N.E.2d 420, 429 (Ohio 2008) (per curiam); *Rosen v. Rosen*, 664 S.E.2d 743, 749 (W. Va. 2008); *Harshberger v. Harshberger*, 724 N.W.2d 148, 153

(N.D. 2006).[2] But others faced with the issue have reached the opposite conclusion. *See McCormick v. Robinson*, 28 N.E.3d 795, 803 (Ill. 2015) (holding that the UCCJEA is better viewed as "a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority"); *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. 2010) (holding that the UCCJEA's predecessor's jurisdictional provisions "inform a court whether it lacks authority to modify custody because of the statutory limitations" but "do not remove subject matter jurisdiction from the court"); *Kenda v. Pleskovic*, 39 A.3d 1249, 1256–57 (D.C. 2012) (holding that the mother was judicially estopped from challenging an Indiana court's jurisdiction under the UCCJEA where the parties had availed themselves of Indiana's jurisdiction and engaged in substantial litigation there).

I agree with the latter line of cases, in which the courts properly treat a court's erroneous application of the UCCJEA's requirements as just that: error, not lack of subject matter jurisdiction. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863–64 (Tex. 2010); *Berry v. Berry*, 786 S.W.2d 672, 673 (Tex. 1990) (per curiam) ("Although a final judgment may be erroneous or voidable, it is not void and thus subject to collateral attack if the court had jurisdiction of the parties and the subject matter."). This is consistent with the modern trend, which we have embraced, away from classifying statutes as jurisdictional in the true subject-matter sense in the absence of clear legislative intent to that effect. "Favoring finality over uncertainty," I would hold that the UCCJEA does not define a court's subject matter jurisdiction and that a court's rendition

---

[2] I recognize this Court's holding in *Alfonso v. Skadden*, 251 S.W.3d 52 (Tex. 2008) (per curiam), which involved a collateral attack of a child-custody default judgment, that the trial court lacked subject matter jurisdiction where the record affirmatively demonstrated an absence of jurisdiction under section 152.201's predecessor. *Id.* at 55. However, we essentially assumed in *Alfonso* that the statute addressed subject matter jurisdiction, and we engaged in no analysis of that issue. *See id.* at 54–55.

of judgment in violation of the statutory requirements, while erroneous, is not void and thus is not subject to collateral attack.  *Engelman*, 514 S.W.3d at 747.

With these additional thoughts, I join the Court's opinion and concur in the judgment.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 8, 2020